***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for modifications to Finding of Fact #10 and minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre Trial Agreement, which was admitted into the record, and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The date of the alleged injury by accident arising out of the course and scope of employment is 10 August 2000.
3. Plaintiff's average weekly wage on 10 August 2000 was $340.00, yielding a compensation rate of $226.68.
4. No medical or indemnity benefit payments have been made by defendants.
5. At the hearing, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2), and a Transcript of Plaintiff's Recorded Statement, which was admitted into the record, and marked as Stipulated Exhibit (3).
6. At the hearing before the deputy commissioner, plaintiff submitted a Photograph of the Warehouse in question, which was admitted into the record, and marked as Plaintiff's Exhibit (1), and a Photograph of a Door Panel, which was admitted into the record, and marked as Plaintiff's Exhibit (2).
7. The deposition of Robert D. Francis, M.D. was submitted after the hearing before the deputy commissioner and admitted into the record.
8. The issues for determination are whether plaintiff sustained a compensable injury by accident on 10 August 2000, and if so, to what benefits, if any, is she entitled.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff resided in Bakersville, North Carolina, and was not employed. On 10 August 2000, plaintiff was employed by defendant-employer as an installer. Plaintiff's duties as an installer included loading and unloading doors, and door panels at defendant-employer's place of business, and at job sites, putting together doors, and installing doors.
2. Defendant-Employer was a family business, with plaintiff's father-in-law, Mr. Howard Jacobus, her mother-in-law, Ms. Kathy Jacobus, as owners, and with her husband, Mr. Tim Jacobus as its president at that time. The business is located in Hendersonville.
3. The door sections handled by plaintiff were in bundles of two to three panels each. The panels were eight to ten feet long, and weighed between sixty and one-hundred (60-100) pounds. The loading, and unloading of the doors was a two-person job. One employee generally stood on the dock, with the other employee standing on the ground, at the back of defendant-employer's van. One worker would hand the end section of the bundle to the other worker, and would assist in guiding the bundle either into, or out of the van. The difference in height between the deck of the van, and defendant-employer's dock was between two and one-half to three feet.
4. On 10 August 2000, plaintiff and her husband were instructed to transport an ordered door to a customer's residence. Plaintiff and her husband loaded the door panels into the van from the dock, and drove to the customer's residence. Upon arrival, it was discovered that the customer had not removed a boat from the garage. As a result, the door could not be installed on the garage. Accordingly, plaintiff and her husband returned to defendant-employer's place of business.
5. Upon returning to the defendant-employer's place of business, plaintiff and her husband proceeded to unload the door panels from defendant-employer's van. On this occasion, plaintiff's husband stood on the loading dock, with plaintiff standing on the ground behind the van. As plaintiff pulled out a door panel, she began to lift it up, to the level of the dock to hand it to her husband. During this movement, plaintiff felt a pop, and experienced pain in her right wrist.
6. Following this incident, plaintiff and her husband examined her wrist and found no swelling. Ms Kathy Jacobus was also informed about the incident, and she instructed plaintiff to apply ice to her wrist. Thereafter, plaintiff sought treatment from Dr. Robert Francis at Hendersonville Orthopedics. Dr. Francis first examined plaintiff on 23 August 2000. On that date, Dr. Francis indicated that plaintiff gave him a history of injuring her hand at work on
 10 August 2000 when she felt a pop in her wrist while she was unloading garage door panels.
 Dr. Francis noted that plaintiff was experiencing pain over the extensor carpi ulnaris tendon, a tendon on the outside of the wrist, pain over her triangular fibrocartilage, pain when she twisted her wrist, and pain at the lunate triquetral joint.
7. As a result of this examination, Dr. Francis opined that plaintiff had a triangular fibrocartilage tear and a triquetrolunate ligament tear. Dr. Francis also opined that plaintiff had a pre-existing long ulna problem that made her more susceptible to this type of injury, and that the work related incident of 10 August 2000 was the cause of her injuries. For her conditions, Dr. Francis performed surgery on 5 December 2001. At the time of the hearing before the deputy commissioner, plaintiff was still recovering from this surgery.
8. On 25 August 2000, plaintiff gave a recorded statement regarding the circumstances of her injury on 10 August 2000. The transcript of this statement is Stipulated Exhibit (3). In this statement, plaintiff specifically stated that the door panel did not slip, that her hands did not slip, that the panel did not turn, and that its weight did not change abruptly. Plaintiff also stated that at the time of this incident, she was unloading the doors in the normal routine manner, and that nothing about the incident, aside from her injury, seemed different.
9. At the end of September 2000, plaintiff and her husband moved to Bakersville so that he could begin working as a Correctional Officer with the North Carolina Department of Corrections. Plaintiff did not intend to continue working for defendant-employer following her move from Hendersonville to Bakersville.
10. Any of plaintiff's testimony at the hearing or any other evidence, which might tend to contradict her recorded statement by attempting to represent that something unusual occurred on 10 August 2000 is given little weight by the Full Commission.
11. At the time of her injury on 10 August 2000, plaintiff was performing her normal duties for defendant-employer, in the usual and customary manner. Therefore, she did not sustain an injury by accident arising out of and in the course of her employment.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant-employer on 10 August 2000. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act must be, and is HEREBY DENIED.
2. Each side shall pay its own costs.
This the 8th day of September 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER